(47 App. Div. 97.)

PEOPLE ex rel. MOORE v. LEAVY.

(Supreme Court, Appellate Division, Third Department. January 8, 1900.)

MUNICIPAL OFFICERS—CITY PHYSICIANS.

Albany City Charter, tit. 3, § 13, declares that all officers shall continue in office until their successors shall have been duly appointed and qualified. Title 4, § 21, as amended by Laws 1890, c. 64, § 2, authorizes the mayor to appoint six district physicians by filing a certificate of appointment with the clerk of the common council; and title 16, § 13, requires that each district physician shall reside in the district for which he is appointed. Relator was appointed under a preceding administration as district physician of the district in which he resided. Respondent lived in the same district, and was appointed by the succeeding mayor as physician for another district, and was subsequently, by letter, transferred to the district in which both he and relator resided, no valid new appointment having been theretofore made for the latter district. Held, that the mayor

had no authority to assign a physician to duty in a district other than that for which he was appointed; hence relator was entitled to the office, as no successor has been legally appointed.

Appeal from trial term, Albany county.

Proceeding by the people, on relation of James M. Moore, against Mark S. Leavy, in the nature of quo warranto, to determine whether the relator or the respondent is entitled to the office of district physician for the Fifth district in the city of Albany. From a judgment in favor of the relator (59 N. Y. Supp. 408), respondent appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and KELLOGG, JJ.

John A. Delehanty and T. F. Wilkinson, for appellant.
John C. Davies, Atty. Gen., and Chas. Irving Oliver, for respondent.

PARKER, P. J. The action is in the nature of a "quo warranto," to determine whether the relator, Moore, or the defendant, Leavy, is entitled to the office of district physician for the Fifth district in the city of Albany. The situation is as follows: On February 7, 1896, John Boyd Thacher, then mayor of the city, appointed, in the form prescribed by the charter, a physician for each of such districts. The relator, James M. Moore, was the one whom he then appointed for the Fifth district. Moore then took the oath of office, and entered upon its duties, and continued to perform them during the two years which constituted the term of office of Mayor Thacher. On January 1, 1898, Thomas J. Van Alstyne succeeded to the office of mayor of the city, and on the 19th of that month he appointed a district physician for each of such six districts. Such appointment was made by certificate filed in the form and manner required by the charter, and the relator was not one of those who was appointed. By such appointment, Dr. Judson H. Lipes was appointed physician for the Fifth district, and the defendant, Mark S. Leavy, was appointed for the Third district. Dr. Lipes was not a resident of the Fifth district, but did reside in the Fourth district. He therefore never took an oath of office, nor did he ever attempt to act, as district physician of the Fifth district. The defendant, Mark S. Leavy, although appointed, by the certificate aforesaid, as physician for the Third district, actually resided in the Fifth district, and he was therefore ineligible to act in the district for which he was appointed. He, however, on January 22, 1898, took an oath of office as physician for such Third district. Subsequently, however, on February 2d, Mayor Van Alstyne by letter notified the defendant, Leavy, that he transferred him from district No. 3 to district No. 5, and by the same letter notified Dr. Lipes that he transferred him from district No. 5 to district No. 4, and in such letter directed each to perform the duties of district physician in the district to which he had been transferred. Dr. Lipes thereupon took an oath to perform the duties of district physician for district No. 4. He never took any other official oath. The defendant, Leavy, took no oath of office whatever after such notice of transfer.

The defendant's theory is that district physicians are not ap

pointed, under the charter, for particular districts; that the mayor may appoint them from and for the city at large; and that the only limit as to their eligibility is that, in assigning them to duty after appointment, each must reside in the district to which he is assigned. Upon that theory, when Mayor Van Alstyne, in 1898, filed a certificate naming six gentlemen as district physicians for the city of Albany, he had filled each of those six offices, and thus had "appointed" a successor to each of the incumbents then holding such offices, the relator included; that it was not necessary to designate in the certificate filed the district in which each was to serve; and that, therefore, although Dr. Lipes, a nonresident, had been therein assigned to district No. 5, that part of the certificate might be disregarded as surplusage, and the mayor was at liberty to thereafter assign him to another district, and designate the defendant, Leavy, to district No. 5. The relator's claim, however, is that the appointment of a district physician, under the charter, must be made for a certain specified district, and that no one is eligible to such an appointment unless he resides therein; that no one has ever been lawfully appointed for the Fifth district; and therefore he, under the provisions of the city charter, holds over until his successor is lawfully appointed.

I am of the opinion that the claim of the relator is correct. The city charter (section 19, tit. 4) first provides for the appointment by the mayor of one "city physician," who must be confirmed by the common council. His duties appertain to the almshouse, hospital, and pesthouses, and are thus general in their character. By section 21, the mayor is further authorized to biennially, and within three months from the commencement of his term of office, appoint, "by filing a certificate or certificates of appointment with the clerk of the common council (which certificates shall be presented by said clerk to the common council at its next meeting and printed in its journal), one corporation counsel, six district physicians, four city bell-ringers, and such clerks and subordinates, not to exceed two, as he may require to aid him in the discharge of his official duties. Such bell-ringers, clerks and subordinates to hold their positions at the pleasure of the mayor." By section 13, tit. 16, of such charter, it is provided that each district physician "shall receive a salary of $400 per year," "and shall reside in the district for which he is appointed." It is true that the duties of these physicians are not specifically designated in the charter, nor is the city divided into districts, nor is it therein specifically provided how many districts there shall be. But it is plain that the scheme intended is that their duties shall appertain to particular districts, and by section 41, tit. 3, the common council is authorized to confer upon city officers additional powers and prescribe additional duties not inconsistent with existing law. Such common council, in pursuance of such powers and to carry out such scheme, divided the city into six districts, and provided, in substance, that the district physicians should visit and care for the indigent sick in their respective districts.

It seems clear to me that the plain purpose of this scheme was to create a local office for the district physician, and that he must

be appointed as such local officer, and not for the city at large. The eligibility required by the charter is that "he shall reside in the district for which he is appointed,"—a clear expression that he is to be "appointed for a district." This language in itself, it seems to me, negatives the theory that the appointment is one at large, and that the district in which he is to reside, and in which his services are required, may be determined by subsequent assignment. The charter provides for two kinds of offices,—one, that of city physician, general in its character; the other, that of district physician, local in its character. The method of "appointment" which the charter requires also indicates that such was the purpose intended. It is to be made by certificate or certificates, to be filed with the common council, and entered at large upon its records. If the appointment is for a particular district, such district will necessarily be designated in the certificate, and the city records will thus show the territory and define the limits within which the incumbent may be required to perform his duties. But if the appointment is to contain no more than the names of six physicians, and the mayor may by letter or verbally distribute them among the districts in which they reside, or into which he can persuade any one of them to move, no record is kept of the district in which each belongs, and hence confusion is very likely to arise. I am of the opinion that an appointment is not made, unless the certificate filed contains, not only the name of the appointee, but also the district "for which he is appointed" and in which he resides. Such also seems to have been the view under which Mayor Van Alstyne proceeded when he filed the certificate of his appointments. He designated each one of his appointees as district physicians for a particular district. So, also, his predecessor, Mayor Thacher, proceeded. And it is clear from the record that the common council and several of the city departments have so construed the statute. This is an authority of considerable force for the conclusion to which I have arrived.

Under this view, it is apparent that Mayor Van Alstyne has never appointed any district physician as successor to this relator. Dr. Lipes, who was by the certificate appointed to district No. 5, did not reside there. He never took an official oath that he would perform the duties therein, and he has never accepted such duties nor claimed to perform them. The defendant, Dr. Leavy, was by such certificate appointed to district No. 3. He took an official oath to perform the duties of that office. He has never taken any oath to perform such duties within the limits of district No. 5. He has never been "appointed" to district No. 5 by any certificate filed with the common council. He has no claim to act within such district, save by virtue of the letter written him by the mayor, after his appointment to district No. 3 had been filed as above stated. His claim under such letter is in direct conflict with the certificate so filed. Surely, there should be some record in the city showing the district in which Dr. Leavy was to serve; yet, under the theory of the defendant, no such record need exist. The charter (section 13, tit. 3) provides that all officers shall continue in office until their successors shall have been duly appointed and qualified. The relator, Moore,

therefore, is still entitled to the office and its emoluments, no one having been duly appointed, nor having ever qualified, as his successor. For these reasons, I am of the opinion that the judgment ousting the defendant, Leavy, and installing the relator into the office of district physician for the Fifth district of the city of Albany, was correct, and should be affirmed.

Judgment affirmed, with costs. ' All concur.